**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH CLARK,<br><br>                Plaintiff,<br><br>     v.<br><br>POWERFLEET, INC., MICHAEL BRODSKY, STEVE TOWE, ANDERS BJORK, MICHAEL CASEY, CHARLES FRUMBERG, MEDHINI SRINIVASAN, and ELCHANAN MAOZ,<br><br>                Defendants. | Case No. _____<br><br>**COMPLAINT FOR:**<br><br>(1) Breach of Fiduciary Duties<br>(2) Aiding and Abetting Breach of Fiduciary Duties<br>(3) Violations of the Federal Securities Laws<br><br>JURY TRIAL DEMANDED |

Plaintiff Joseph Clark ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a stockholder action brought by Plaintiff against PowerFleet, Inc. ("Powerfleet" or the "Company") and the members of Powerfleet's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), and breaches of fiduciary duty, in connection with the Board's attempt to combine the Company with MiX Telematics Limited ("Mix Telematics") (the "Proposed Transaction").

2. On October 10, 2023, Powerfleet, Powerfleet's wholly owned subsidiary Main Street 2000 Proprietary Limited ("Powerfleet Sub"), and Mix Telematics entered into an

implementation agreement (the "Implementation Agreement"). Pursuant to the terms of the Implementation Agreement, Powerfleet and Mix Telematics will combine, with Mix Telematics shareholders exchanging their outstanding Mix Telematics ordinary shares (including Mix Telematics ordinary shares represented by Mix Telematics American Depository Shares ("ADSs")) for 0.12762 shares of Powerfleet common stock for each Mix Telematics ordinary share held (and in the case of holders of Mix Telematics ADSs, 3.19056 shares of Powerfleet common stock for each Mix Telematics ADS held). Upon completion of the Proposed Transaction, Powerfleet securityholders will own approximately 34.5% of the combined company, with Mix Telematics securityholders owning approximately 65.5%.

3. On January 24, 2024, the Board authorized the filing of the materially incomplete and misleading Form 424B3 Prospectus (the "Prospectus") with the SEC. Specifically, the Prospectus, which recommends that Powerfleet stockholders vote their shares in favor of the Proposed Transaction, contains materially incomplete and misleading information, including with respect to: (i) Powerfleet management's financial projections and the most critical metric for Powerfleet stockholders—Powerfleet's, Mix Telematics' and the pro forma company's respective unlevered free cash flow ("UFCF") projections—relied upon by the Board's financial advisor, William Blair & Company, L.L.C. ("William Blair"), in connection with its fairness opinion; (ii) the financial analyses underlying William Blair's fairness opinion; and (iii) potential conflicts of interest faced by William Blair.

4. The failure to adequately disclose such material information constitutes a breach of the defendants' fiduciary duties and a violation of Sections 14(a) and 20(a) of the Exchange Act as Powerfleet stockholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for Powerfleet stockholders to vote on the Proposed Transaction is currently scheduled for February 28, 2024. It is imperative that such fiduciary duty and Exchange Act violations are promptly cured to enable Plaintiff and Powerfleet's other shareholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the stockholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Powerfleet's common stock trades on the Nasdaq Global Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Powerfleet common stock.

3

10. Defendant Powerfleet is a Delaware corporation, with its principal executive offices located at 123 Tice Boulevard, Woodcliff Lake, New Jersey 07677. Powerfleet's shares trade on the Nasdaq Global Market under the ticker symbol "PWFL."

11. Defendant Michael Brodsky has been Chairman of the Board and a director of the Company at all relevant times.

12. Defendant Steve Towe has been Chief Executive Officer and a director of the Company at all relevant times.

13. Defendant Anders Bjork has been a director of the Company at all relevant times.

14. Defendant Michael Casey has been a director of the Company at all relevant times.

15. Defendant Charles Frumberg has been a director of the Company at all relevant times.

16. Defendant Medhini Srinivasan has been a director of the Company at all relevant times.

17. Defendant Elchanan Maoz has been a director of the Company at all relevant times.

18. Defendants identified in paragraphs 11-17 are collectively referred to herein as the "Board" or the "Individual Defendants."

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

19. By reason of the Individual Defendants' positions as officers and/or directors of the Company, they are in a fiduciary relationship with Plaintiff and the other public stockholders of Powerfleet and owe them, as well as the Company, the duties of care, loyalty, and good faith.

20. In accordance with their duties of care, loyalty, and good faith, where the directors of a publicly traded corporation undertake a transaction that will result in either a change in corporate control or a break-up of the corporation's assets, the directors must take all steps

reasonably required to maximize the value stockholders will receive rather than use a change of control to benefit themselves, and if such transaction will result in a change of corporate control, the stockholders are entitled to receive a significant premium.  Moreover, the directors must take all steps reasonably required to disclose all material information concerning the proposed change of control to enable the stockholders to make an informed voting decision.  To diligently comply with their fiduciary duties, the Individual Defendants may not take any action that:

(a) favors themselves or will discourage or inhibit alternative offers to purchase control of the corporation or its assets;

(b) adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's stockholders; and/or

(c) will provide the Individual Defendants with preferential treatment at the expense of, or separate from, the public stockholders.

21. In accordance with their duties of loyalty and good faith, the Individual Defendants are obligated to refrain from:

(a) participating in any transaction where the Individual Defendants' loyalties are divided;

(b) participating in any transaction where the Individual Defendants receive, or are entitled to receive, a personal financial benefit not equally shared by the public stockholders of the corporation; and

(c) unjustly enriching themselves at the expense of, or to the detriment of, the public stockholders.

22. Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, are knowingly or recklessly violating their fiduciary

duties, including their duties of care, loyalty, and good faith owed to Plaintiff and other public stockholders of Powerfleet.

**SUBSTANTIVE ALLEGATIONS**

**Background of the Company**

23.     Powerfleet provides wireless Internet-of-Things ("IoT") asset management solutions in the United States, Israel and internationally.  The Company offers real-time intelligence for organizations to capture IoT data from various types of assets with devices and sensors to increase efficiencies, improve safety and security, and increase their profitability in easy-to-understand reports, dashboards and real-time alerts.  Powerfleet also offers application programming interfaces for additional integrations and development to boost other enterprise management systems and third-party applications.  In addition, the Company provides hosting, maintenance, and support and consulting services, as well as Software as a Service, including system monitoring, help desk technical support, escalation procedure development, routine diagnostic data analysis and software updates services.  Powerfleet's products are offered under the PowerFleet, Pointer, and Cellocator brands.

**The Proposed Transaction**

24.     On October 10, 2023, Powerfleet announced that it had entered into the Proposed Transaction, stating, in relevant part:

> **WOODCLIFF LAKE, NJ – October 10, 2023 – PowerFleet, Inc. (Nasdaq: PWFL)** and **MiX Telematics Limited (NYSE: MIXT, JSE: MIX)** today announced that they have entered into a definitive agreement to form one of the largest mobile asset Internet of Things (IoT) Software-as-a-Service (SaaS) providers in the world. This powerful combination will form a scaled, global entity of choice focused on helping customers save lives, time, and money by solving mission-critical business challenges including safety and risk management, compliance, sustainability, and operational efficiency.
>
> **BUSINESS COMBINATION SUMMARY AND KEY DEVELOPMENTS**

- Combined business with total revenue of $279 million, including $210 million in recurring high-margin SaaS revenue and $39 million of adjusted EBITDA for the trailing twelve-month (TTM) period ended June 30, 2023 (excluding selected non-cash and non-recurring items).

- The transaction is expected to close in the first quarter of calendar year 2024.

- Upon close, the combined business will be branded as Powerfleet, with its primary listing on Nasdaq.

**MANAGEMENT COMMENTARY**

"By leveraging our proven SaaS strategy across the combined business, spearheaded by our Unity platform and data highway, we firmly believe we will be extremely well positioned to drive incremental market consolidation. Realizing transformative scale, this transaction with MiX will provide the go-forward company with 1.7 million subscribers, and the ability to sell additive and accelerated AI and data-powered software solutions to a truly global set of customers," said Steve Towe, Powerfleet's Chief Executive Officer, who will continue serving as CEO of the combined Powerfleet company. "This combination is expected to achieve a number of strategic objectives including unlocking strong incremental value creation opportunities; a refinanced balance sheet for the combined company that will provide more flexibility to execute our strategic growth initiatives; and the ability to retain and attract an expanded portfolio of shareholders. Combining with MiX, an extremely well-run and profitable organization, will establish the combined entity as a world-class SaaS company, giving us the speed and capability to achieve improved growth in high quality recurring revenues and expanded profitability much sooner."

Stefan Joselowitz, Chief Executive Officer at MiX Telematics, intends to retire at the conclusion of this transaction, but plans to continue to be a shareholder of the new combined entity. Joselowitz added, "I am extremely proud of our heritage and the high-quality business MiX is today, and I am delighted to have finally found an ideal partner that shares our values and strategic goals to take the company to the next level. We strongly believe that Powerfleet's Unity strategy and our combined scale perfectly positions us to revolutionize the mobile asset IoT SaaS industry and drive transformative growth. As a shareholder I am very excited about how this combination will accelerate the achievement of our shared strategic goals."

**STRATEGIC RATIONALE**

Compelling benefits expected from the transaction:

- **Enhanced Shareholder Value**: The transaction will immediately increase value to our existing and prospective shareholders with combined total revenue

of $279 million and $39 million of adjusted EBITDA.The stronger balance sheet paired with the growth-centric capital structure is expected to propel the combined entity towards ambitious and achievable growth goals, including "Rule of 40" performance.

- **Market Leadership**: The combined company will create a top-tier mobile asset IoT SaaS organization with significant scale, serving all mobile asset types. The increased scale is expected to enable the combined entity to more efficiently serve our customers and create advantage to compete in an industry characterized by the need for high pace of development and innovation.

- **Scale and Data Strategy**: With a combined base of approximately 1.7 million subscribers following the transaction, the joint entity is expected to achieve significant scale as well as enhance our Unity platform strategy – including our AI-led data harmonization and integration capabilities.

- **Research and Development Excellence**: By integrating the Powerfleet and MiX world-class engineering and technology teams, the combined organization is expected to accelerate the delivery of top-class solutions with improved competitive advantage.

- **Go-to-Market Acceleration and Increased Reach**: Our combined geographical footprint, deep vertical expertise, and expanded software solution sets coupled with our extensive direct and indirect sales channel capabilities will enable us to maximize significant cross-sell and upsell opportunities within our impressive joint customer base.

- **World-Class Talent**: With more than 1,800 tenured and talented team members worldwide, the combined entity will focus on attracting and retaining top talent to deliver optimal value to our customers.

**TRANSACTION TERMS AND FINANCING**

MiX shareholders will exchange 100% of their outstanding MiX ordinary shares (including MiX ordinary shares represented by MiX American Depository Shares (ADSs), each of which represents 25 MiX ordinary shares) for consideration consisting of Powerfleet common shares, payable at closing. The number of Powerfleet common shares to be issued as consideration will be based on a post-transaction ownership structure, whereby current MiX shareholders will own approximately 65%, and current Powerfleet shareholders will own approximately 35% of the combined entity immediately following the closing of the transaction. This exchange ratio assumes all MiX issued ordinary shares (including those represented by MiX ADSs) are exchanged for common shares in Powerfleet.

In connection with the transaction, Powerfleet and MiX are positioned to secure $75 million in incremental debt which the companies anticipate will be fully

executed at or before close. The proceeds from the refinancing of the combined company's balance sheet will be used to redeem in full the outstanding convertible preferred stock held by affiliates of Abry Partners. Transaction-related expenses will be paid from cash on the balance sheet.

The closing of the transaction is subject to customary conditions, including required approvals of regulatory authorities and Powerfleet and MiX shareholders.

**BOARD AND EXECUTIVE LEADERSHIP**

Following the transaction, Steve Towe will remain CEO of Powerfleet and David Wilson will remain CFO. Stefan Joselowitz, current CEO of MiX, will be retiring.

A new board of directors of Powerfleet will be formed. Michael Brodsky will be Chairman. Steve Towe will be on the board. Ian Jacobs, MiX Telematics' current Chairman, will be joining the board. MiX will appoint one additional board member and further board member appointments will be made by mutual consent.

*  *  *

**TRANSACTION ADVISORS**

William Blair & Company L.L.C. is acting as financial advisor, and Olshan Frome Wolosky LLP and Webber Wentzel are acting as legal advisors to Powerfleet. Raymond James and Java Capital are acting as financial advisors to MiX Telematics, and DLA Piper LLP (US) and Java Capital are acting as legal advisors to MiX Telematics. Gateway Group is acting as investor relations advisor to Powerfleet and MiX Telematics.

**The Materially Incomplete and Misleading Prospectus**

25. On January 24, 2024, the Board caused to be filed a materially incomplete and misleading Prospectus with the SEC. The Prospectus, which recommends that Powerfleet stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (i) the financial projections for Powerfleet, Mix Telematics and the pro forma company, including the respective UFCFs relied upon by the Board's financial advisor William Blair in connection with its fairness opinion; (ii) the financial analyses underlying the fairness opinion provided by William Blair; and (iii) potential conflicts of interest faced by William Blair.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for Powerfleet, Mix Telematics and the Pro Forma Company*

26. The Prospectus fails to disclose material information concerning the financial projections for Powerfleet, Mix Telematics and the pro forma company.

27. Critically, the Prospectus fails to disclose the UFCFs that Powerfleet, Mix Telematics and the pro forma company were forecasted to generate during the fiscal years ending December 31, 2023 through December 31, 2032, relied upon by the Board's financial advisor in connection with its respective discounted cash flow analyses of Powerfleet, Mix Telematics and the pro forma company. A discounted cash flow analysis is considered the premier and most reliable valuation tool that a banker can employ in a merger context, because management's own internal projections (typically cash flows or UFCFs) are the core component of the analysis.[1] The UFCFs formed the bases of the discounted cash flow analyses of Powerfleet, Mix Telematics and the pro forma company performed by William Blair in connection with its fairness opinion. *See* Prospectus at 77 ("William Blair utilized the forecasts to perform a discounted cash flow analysis of Powerfleet's projected future unlevered free cash flows for the fiscal years ending December 31, 2023 through December 31, 2032."), 78 ("William Blair utilized the forecasts to perform a discounted cash flow analysis of MiX Telematics' projected future [unlevered] free cash flows for the fiscal years ending December 31, 2023 through December 31, 2032."), *id.* ("The implied equity value per share of the pro forma company was calculated using the discounted cash flow analysis

---

[1] *See, e.g., Onti, Inc. v. Integra Bank*, 751 A.2d 904, 916 n.53 (Del. Ch. 1999) (indicating that the Delaware Chancery Court has employed the DCF method as a method of valuation and that experts consider it to be the preeminent method of valuation); *Neal v. Alabama By-Products Corp.,* C.A. No. 8282, 1990 Del. Ch. LEXIS 127, at *20 (Del. Ch. Aug. 1, 1990) (noting that experts consider the DCF method to be the preeminent method of valuation).

of the pro forma company's projected future [unlevered] free cash flows, including the expected synergies, for the fiscal years ending December 31, 2023 through December 31, 2032.").

28. The Prospectus includes a summary of "Powerfleet management's forecasts provided on October 7, 2023" and the "MiX extrapolated forecasts provided on October 7, 2023"[2] each as relied upon by William Blair in connection with the financial analyses underlying its fairness opinion. *See id.* at 70, 72-73. Yet, this summary fails to include the most important projections – the UFCFs, or the underlying line items. Instead, the Prospectus includes the "Net Operating Profit after Tax" that Powerfleet and Mix Telematics are projected to generate during the fiscal years ending December 31, 2023 through December 31, 2032. *See id.* at 70. Although Net Operating Profit after Tax was approved by the Board for purposes of William Blair's respective discounted cash flow analyses (*see id.*), William Blair utilized UFCFs – not Net Operating Profit after Tax – as the basis of its respective discounted cash flow analyses. *See id.* at 77-78. Moreover, the Prospectus fails to disclose any of Powerfleet management's projections for the pro forma company including the expected synergies, including, but not limited to, the UFCFs for the pro forma company. The omission of the respective UFCFs and the inclusion of the Net Operating Profit after Tax renders the Powerfleet and Mix Telematics projections on page 70 and the summaries of the *Discounted Cash Flow Analysis* of Powerfleet, Mix Telematics and the pro forma company performed by William Blair set forth on pages 77-78 of the Prospectus incomplete and misleading, because the Prospectus provides a materially incomplete and misleading valuation picture of Powerfleet, Mix Telematics, and the pro forma company.

---

[2] The "MiX extrapolated forecasts provided on October 7, 2023" include Mix Telematics management's projections of Mix Telematics through calendar year 2027, as extended through calendar year 2032 by Powerfleet management, and approved for William Blair's use by the Board.

11

29. In addition, with respect to the Company's "Powerfleet management's forecasts provided on July 1, 2023," the Prospectus fails to disclose: (i) Net Operating Profit after Tax and UFCF over the projection period, and all underlying line items; and (ii) the line items underlying the calculation of Adjusted EBITDA.

30. Similarly, with respect to the "Powerfleet management's forecasts provided on July 1, 2023" and "MiX extrapolated forecasts provided on October 7, 2023," the Prospectus fails to disclose the respective line items underlying the calculation of: (i) Adjusted EBITDA; and (ii) Net Operating Profit after Tax.

*Material Misrepresentations and/or Omissions Concerning William Blair's Financial Analyses*

31. The Prospectus fails to disclose material information concerning William Blair's financial analyses.

32. With respect to William Blair's *Discounted Cash Flow Analysis* of Powerfleet, in addition to the Company's UFCFs, the Prospectus fails to disclose a quantification of: (i) the Company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 13.50% to 15.50%; (iii) Powerfleet's net cash; (iv) preferred stock and minority interest as of June 30, 2023; and (v) Powerfleet's total diluted shares outstanding as of October 8, 2023, as adjusted.

33. With respect to William Blair's *Discounted Cash Flow Analysis* of Mix Telematics, in addition to Mix Telematics' UFCFs, the Prospectus fails to disclose a quantification of: (i) Mix Telematics' terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 15.00% to 17.00%; (iii) Mix Telematics' net cash; (iv) minority interest as of June 30, 2023; and (v) Mix Telematics' total diluted shares outstanding as of October 8, 2023, as adjusted.

34. With respect to William Blair's *Discounted Cash Flow Analysis* of the pro forma company, in addition to the pro forma company's UFCFs, the Prospectus fails to disclose a quantification of: (i) the pro forma company's terminal values; (ii) the inputs and assumptions underlying the discount rates ranging from 14.25% to 16.25%; (iii) the pro forma company's net debt and preferred stock immediately after the closing of the Proposed Transaction; and (iv) the implied pro forma diluted shares outstanding.

35. With respect to William Blair's *Selected Public Companies Analysis*, the Prospectus fails to disclose: (i) the individual multiples and financial metrics of the companies observed; and (ii) Powerfleet's and Mix Telematics' preferred stock, minority interest, and net debt as of June 30, 2023, as well as the number of fully diluted shares for Powerfleet and Mix Telematics.

36. With respect to William Blair's *Selected Precedent Transactions Analysis*, the Prospectus fails to disclose: (i) the individual financial metrics of the transactions observed; and (ii) Powerfleet's and Mix Telematics' preferred stock, minority interest, and net debt as of June 30, 2023, as well as the number of fully diluted shares for Powerfleet and Mix Telematics.

37. With respect to William Blair's *Relative Contribution Analysis*, the Prospectus fails to disclose a quantification of: (i) Powerfleet's and Mix Telematics' respective 2023 and 2024 EBITDA used in the analysis; and (ii) Powerfleet's and Mix Telematics' respective net debt, preferred stock and minority interest as of June 30, 2023.

*Material Misrepresentations and/or Omissions Concerning William Blair's Potential Conflicts of Interest*

38. The Prospectus fails to disclose material information concerning the potential conflicts of interest faced by William Blair.

39. Specifically, the Prospectus fails to disclose whether William Blair has performed any services for Mix Telematics or its affiliates in the two years prior to its fairness opinion and, if so, the details of the services provided and the fees received for such services.

40. In sum, the omission of the above-referenced information renders statements in the "Powerfleet Unaudited Prospective Financial Information" and "Opinion of Powerfleet's Financial Advisor" sections of the Prospectus materially incomplete and misleading in contravention of the Exchange Act and in violation of defendants' fiduciary duties. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Powerfleet will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against the Individual Defendants for Breach of Fiduciary Duties**

41. Plaintiff repeats and realleges each and every allegation set forth herein.

42. The Individual Defendants have breached their fiduciary duties to Plaintiff and the other stockholders of Powerfleet and have acted to put their personal interests ahead of the interests of the Company's public stockholders.

43. By the acts, transactions, and courses of conduct alleged herein, defendants, individually and acting as part of a common plan, are attempting to unfairly deprive Plaintiff and the other stockholders of Powerfleet of the true value of their investment in Powerfleet.

44. Further, the Individual Defendants disseminated materially misleading and incomplete information to the Company's public stockholders. The Individual Defendants have an obligation to be complete and accurate in their disclosures.

45. The Prospectus fails to disclose material information, including financial information and information necessary to prevent the statements contained therein from being misleading. The misleading omissions and disclosures by defendants concerning the financial projections for Powerfleet, Mix Telematics and the pro forma company, William Blair's financial analyses underlying its fairness opinion, and potential conflicts of interest faced by William Blair affirm the inadequacy of disclosures to the Company's stockholders. Defendants' failure to provide full and fair disclosure strips Plaintiff and the other stockholders of Powerfleet of their ability to make an informed decision with respect to the Proposed Transaction, and damages them.

46. By reason of the foregoing, the Individual Defendants have breached their fiduciary duties of, *inter alia*, good faith, loyalty, fair dealing, and due care to Plaintiff and the other stockholders of Powerfleet. As such, unless the Individual Defendants' conduct is enjoined by the Court, they will continue to breach their fiduciary duties to Plaintiff and the other stockholders of Powerfleet.

47. Plaintiff has no adequate remedy at law.

## COUNT II

### Claim Against Powerfleet for Aiding and Abetting

48. Plaintiff repeats and realleges all previous allegations as if set forth in full herein.

49. Defendant Powerfleet knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Transaction, which, without such aid, would not have occurred.

50. As a result of this conduct, Plaintiff and the other stockholders of Powerfleet have been and will be damaged in that they have been and will be prevented from obtaining a fair value for Powerfleet.

51. Plaintiff has no adequate remedy at law.

## COUNT III

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Powerfleet**

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants disseminated the false and misleading Prospectus, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Powerfleet is liable as the issuer of these statements.

54. The Prospectus was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Prospectus.

55. The Individual Defendants were at least negligent in filing the Prospectus with these materially false and misleading statements.

56. The omissions and false and misleading statements in the Prospectus are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Prospectus and in other information reasonably available to stockholders.

57. The Prospectus is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

58. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

59. Because of the false and misleading statements in the Prospectus, Plaintiff is threatened with irreparable harm.

## COUNT IV

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. The Individual Defendants acted as controlling persons of Powerfleet within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Powerfleet and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Prospectus, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

62. Each of the Individual Defendants was provided with or had unlimited access to copies of the Prospectus alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

63. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

17

herein, and exercised the same. The Prospectus contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Prospectus.

64. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Powerfleet, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Prospectus;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Prospectus that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  February 2, 2024                                         **ACOCELLI LAW, PLLC**

                                                         By   */s/ Richard A. Acocelli*
                                                              Richard A. Acocelli
                                                              33 Flying Point Road, Suite 131
                                                               Southampton, NY 11968
                                                               Tel: (631) 204-6187
                                                               Email: racocelli@acocellilaw.com

                                                               *Attorneys for Plaintiff*